# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRC ELECTRONICS, INC.** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 23-1445** |
| **v.** | : | |
| | : | |
| **AGRIFY CORPORATION** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                          AUGUST 22, 2023

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff TRC Electronics Incorporated ("TRC" or "Plaintiff") filed this breach of contract action against Defendant Agrify Corporation ("Agrify" or "Defendant") premised on Defendant's failure to remit payment for specially ordered merchandise procured by Plaintiff for Defendant resulting in a loss of more than $565,000 in damages. Before this Court is Defendant's motion to compel arbitration filed pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to stay the proceedings pursuant to 9 U.S.C. § 3. Plaintiff opposes the motion and disputes that the parties' agreement includes an arbitration provision. The issues raised by the parties have been fully briefed and are ripe for disposition. For the reasons set forth herein, Defendant's motion to compel arbitration and/or stay is denied.

**BACKGROUND**

The facts relevant to Defendant's motion are as follows:[1]

Plaintiff is a wholesale distributor of electronic components with a principal place of business in Pennsylvania. Defendant is a provider of cultivation and extraction solutions for the cannabis industry with its principal place of business in Massachusetts.

---

[1] The facts detailed here are gleaned from Plaintiff's complaint and exhibits attached thereto. (ECF 1). The facts will be construed in the light most favorable to the non-movant—here, Plaintiff.

In December 2020, Defendant submitted a written credit application (the "Credit Contract") seeking credit privileges from Plaintiff. The Credit Contract provided Defendant a thirty-day payment term for future orders rather than requiring upfront payment. The Credit Contract also provided that, "[a]ll bids and quotations issued by, and all orders for products accepted by, TRC shall be governed by TRC's standard Terms and Conditions of Sale, a copy of which can be accessed on TRC's website and is incorporated herein by reference." (Compl., ECF 1, ¶ 7). Plaintiff's standard Terms and Conditions ("Plaintiff's Terms and Conditions") provide, *inter alia,* that:

> Any dispute arising out of or in connection with any Order, Product or the relationship of TRC and Buyer will be adjudicated exclusively in the state courts for Bucks County, Pennsylvania or the federal courts for the Eastern District of Pennsylvania, and all parties consent to personal jurisdiction and venue therein . . . .

(Pl.'s Terms and Conditions, Compl. Ex. B, ECF 1-4, at p. 5). Plaintiff's Terms and Conditions also include a clause making Plaintiff's acceptance of any future order expressly conditional upon the buyer's—here, Defendant's—assent to the terms therein. Plaintiff's Terms and Conditions also provide that "Special Orders," defined as orders that are manufactured specifically to fulfill the buyer's order, are "non-cancelable" and "non-returnable."

In February, June, and July 2022, Defendant submitted to Plaintiff three separate written purchase orders ("Defendant's Purchase Orders" or the "Purchase Orders") for specific merchandise. Each of the Purchase Orders includes the quantity, price, thirty-day payment term, and shipping location. Each also includes ***Defendant's*** standard terms and conditions ("Defendant's Terms and Conditions") in their entirety. Specifically, Defendant's Terms and Conditions provide, in part, that "[a]ny controversy arising out of or relating to an Order, including any modification or amendment thereof, shall, at Buyer's option, be resolved by arbitration within 25 miles of Burlington, Massachusetts pursuant to the rules of the American Arbitration Association." (Def.'s Purchase Order No. 2764, Compl. Ex. C, ECF 1-5, at p. 5). Defendant's Terms and Conditions also include provisions limiting Defendant's acceptance to the terms of Defendant's Purchase Order and preemptively rejecting any additional or different terms of the seller. These limiting provisions provide, in relevant part:

> Any terms in Seller's Order acknowledgment, sales literature, quotations, invoice, or any other documents which are in conflict with or in addition to these terms stated on the face or back hereof are hereby deemed to be material alterations to the terms of an Order and . . . notice is hereby given to Seller that any such terms are rejected.
>
> Seller's commencement of work on or shipment of Goods covered by an Order shall be deemed an effective mode of acceptance of

> Buyer's offer to purchase contained in such Order. Any acceptance of a purchase set forth in an Order is limited to acceptance of the express terms of such Order and these terms and conditions. Any proposal for additional or different terms or any attempt by Seller to vary, in any degree, any of the terms of an Offer or these terms and conditions in Seller's acceptance by sales confirmation or otherwise shall not operate as a rejection of such Offer, unless such variance is in the terms of the description, quantity, price, or delivery schedule of identified Goods, which shall be considered a material alteration thereof, and the offer set forth in such Offer shall be deemed accepted by Seller without said additional or different terms. If an Order shall be deemed an acceptance of a prior offer by Seller, such acceptance is expressly conditional on Seller's assent to any additional or different terms contained in such Offer.

(Def.'s Purchase Order No. 2764, Compl. Ex. C, ECF 1-5, at p. 4).

After Defendant submitted each of the Purchase Orders, Plaintiff issued a timely, written order acknowledgment to Defendant ("Plaintiff's Order Acknowledgment") which again expressly incorporate ***Plaintiff's*** Terms and Conditions listed on Plaintiff's website.

Once each order had been submitted and acknowledged, Plaintiff promptly placed orders with its overseas manufacturer to fulfill Defendant's Purchase Orders in a timely manner. Defendant then paid an $88,244 deposit to enroll in the Lead Time Guarantee Program which was to be applied to the balance of the final Purchase Order.

In July 2022, Plaintiff began delivering Defendant's ordered components and issued an invoice for $56,758. Defendant paid only $20,000 toward the balance of the July 2022 invoice. In October 2022, Plaintiff made another delivery to Defendant and issued an invoice for $41,175. Defendant, however, made no payment toward the October 2022 invoice. Because of Plaintiff's belief that Defendant would not be able to pay for the merchandise ordered in the third Purchase Order, Plaintiff withheld delivery. Defendant sought to cancel its final Purchase Order after Plaintiff had already procured the ordered components. Plaintiff advised Defendant that the Purchase Order was non-cancelable.

As noted, Plaintiff asserts various contract-based claims premised on Defendant's alleged failure to fully pay for goods ordered from and provided by Plaintiff, as well as claims regarding Defendant's attempt to rescind an order specified as non-cancelable. In its response to the complaint, Defendant moves to compel arbitration, relying on an arbitration provision in

Defendant's Terms and Conditions.  Plaintiff opposes Defendant's motion, arguing that Plaintiff never agreed to arbitrate and that Defendant is bound by Plaintiff's Terms and Conditions incorporated within the Credit Contract and Plaintiff's Order Acknowledgements.  Alternatively, Plaintiff argues that the writings exchanged by the parties contain conflicting terms should be "knocked out" by application of Uniform Commercial Code ("U.C.C.") § 2-207.

**LEGAL STANDARD**

When addressing a motion to compel arbitration, the Court must first determine the standard of review to apply; *to wit*: either the standard applied to motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12 or that applied to motions for summary judgment under Rule 56.  *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013).  The United States Court of Appeals for the Third Circuit (the "Third Circuit") clarified in *Guidotti* that a Rule 12 standard is the appropriate standard of review "[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)." *Id.* at 773 (internal quotation omitted).  Additionally, the Third Circuit has deemed it appropriate to consider exhibits attached to the complaint during the motion to dismiss stage.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citation omitted).  Here, this Court finds that the Rule 12 standard is the appropriate standard because the affirmative defense of arbitrability is apparent from the documents attached to the complaint.

When applying the motion to dismiss standard under Rule 12(b)(6), "the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).  In the context of a

12(b)(6) motion seeking to compel arbitration, "[the court] look[s] to the complaint and the documents on which it relies and will compel arbitration only if it is clear, when read in the light most favorable to the [non-moving party], that the parties agreed to arbitrate." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 325 (3d Cir. 2022).

**DISCUSSION**

As noted, Plaintiff asserts various contract-based claims premised upon its contractual relationship with Defendant, and Defendant moves to compel arbitration of Plaintiff's claims. The parties' respective arguments for and against arbitration will be addressed and analyzed in turn. At the outset, however, this Court will briefly address the choice-of-law rules as applicable to this case.

*Choice of Law*

Defendant seemingly disputes the application of Pennsylvania law in this matter. When a federal court is sitting in diversity, as in the case *sub judice*, it must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Accordingly, this Court will apply Pennsylvania's choice-of-law rules to the instant dispute.

The first step in Pennsylvania's choice-of-law analysis is to ascertain whether there is an actual conflict between the implicated states that would lead to different outcomes in the case. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If there is no actual conflict, then the analysis need not proceed. *See Lucker Mfg. Inc. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994). When the parties to a suit have not identified any substantive conflicts between the possibly implicated states' laws and have relied on Pennsylvania law (the law of the forum state), the Third Circuit has found it appropriate to apply substantive Pennsylvania state law to contract disputes

5

between diverse parties. *See SodexoMAGIC, L.L.C. v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022).

Here, apart from raising the issue in a footnote, Defendant provides no argument in support of the application of any other state's laws. Further, neither party has identified the existence of any actual conflicts of law. Indeed, both parties (notably, including Defendant) rely on Pennsylvania substantive law to support their respective positions with respect to the issues raised. Under these circumstances, the "substantive issues should be decided as the Pennsylvania Supreme Court 'would rule if it were deciding the case.'" *Id.* at 204 (applying Pennsylvania law where neither party identified existence of a conflict of law and both parties relied on Pennsylvania substantive law). Moreover, a review of the substantive laws of Pennsylvania, Massachusetts, and Georgia[2] reveals no actual conflict between those states' substantive application of U.C.C. § 2-207.[3] Accordingly, the Court will apply Pennsylvania substantive law to decide the instant dispute. *See id.* at 204 (applying Pennsylvania law as the forum state when there was no conflict of law); *Broederdorf v. Bacheler*, 129 F. Supp. 3d 182, 193 (E.D. Pa. 2015) (same).

---

[2]  Although Defendant does not argue for application of a specific non-forum state's law, the Court has determined these states to be the only states with a potential interest in the current dispute. As noted, Plaintiff is domiciled in and has its principal place of business in Pennsylvania, Defendant is domiciled in and has its principal place of business in Massachusetts, and delivery of the contracted-for goods was made in Georgia.

[3]  All three states have adopted U.C.C. § 2-207 and apply it the same way. *See* 13 Pa. Cons. Stat. § 2207; Mass. Gen. Laws ch. 106, § 2-207; Ga. Code Ann. § 11-2-207; *see, e.g.*, *Flender Corp. v. Tippins Intern., Inc.*, 830 A.2d 1279 (Pa. Super. Ct. 2003) (conducting battle-of-the-forms analysis); *Com. & Indus. Ins. Co. v. Bayer Corp.*, 742 N.E.2d 567 (Mass. 2001) (same); *Eagle Jets, L.L.C. v. Atlanta Jet, Inc.*, 740 S.E.2d 439, 446 n.5 (Ga. Ct. App. 2013) (finding U.C.C. § 2-207 inapplicable but favorably citing the Third Circuit's interpretation of U.C.C. § 2-207(3)).

*Application of the Uniform Commercial Code ("U.C.C.") § 2-207*

Turning to the crux of the parties' dispute whether to compel arbitration, this Court must determine whether the contract governing the parties' relationship includes a binding arbitration provision. To guide district courts engaged in analyzing motions to compel arbitration, the Third Circuit has provided that "the threshold questions a district court must answer before compelling . . . arbitration are these: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998).

Because this Court finds that the parties did not agree to arbitrate, the following analysis addresses only the first of the two questions. The parties disagree as to whether they reached an agreement to arbitrate. Among its arguments, Plaintiff contends that the initial "Credit Contract" signed by Defendant in December 2020, which does not contain an arbitration provision, governs the sales at the center of this dispute. In contrast, Defendant argues that Defendant's Purchase Orders, which contain an arbitration provision, govern.

Plaintiff is mistaken in its assertion that the Credit Contract governs the series of sales transactions between the parties. The Credit Contract merely provides the terms on which Plaintiff may or may not agree to extend credit to Defendant for future purchases. In that regard, the Credit Contract provides a thirty-day payment term. However, the Credit Contract does not contain essential terms such as price, quantity, or timing and mode of delivery. In fact, the Credit Contract is merely a credit application,[4] whereby Defendant seeks a thirty-day payment term for possible

---

[4] The document at issue is labeled as both a "Credit Contract" and a "Credit Application." The document does not purport to extend credit to the signatory, but instead merely indicates that the Plaintiff may decide to extend credit to the signatory.

7

prospective/future sales. Notably, the Credit Contract does not guarantee that the Plaintiff will provide anything to Defendant—its last provision provides: "Nothing contained in this Application shall obligate TRC to extend Credit Privileges to Applicant. TRC may extend or refuse Credit Privileges to Applicant, or increase or decrease the amount of Credit Privileges available to Applicant at any time, in its sole discretion." (Pl.'s Credit Contract/Credit Application, Compl. Ex. A, ECF 1-3). As such, Plaintiff's initial argument is misplaced because the Credit Contract contains no essential terms inherent to a sale-of-goods transaction.

As this matter involves a contract for the sale of goods, this case fits into a U.C.C. "battle of the forms" frame of analysis wherein Defendant's Purchase Orders, Plaintiff's Order Acknowledgements and parties' conduct combine to create the parties' contractual relationship. *See* 13 Pa. Cons. Stat. § 2102 ("Unless the context otherwise requires, this division applies to transactions in goods."). Notably, the parties do not dispute the existence of a contract. Rather, they dispute the terms of their contract on account of their exchange and purported acceptances of each party's respective terms and conditions, which conflict in various respects. The parties' dispute fits squarely into a classic battle of the forms, which is governed by 13 Pa. Cons. Stat. § 2207, Pennsylvania's codification of U.C.C. § 2-207. *See Flender*, 830 A.2d at 1284 (explaining the applicability of Pennsylvania's § 2207 to merchants' exchange of competing forms). "Section 2207 provides a remedy for the shortcomings of common law contract theory, which required parties entering a contract to reach agreement on all material terms." *Id.* Instead, pursuant to § 2207, "mere non-conformance between competing forms will not undermine the formation of a contract, so long as the parties demonstrate their mutual assent to essential terms." *Id.* Section 2207 provides, in full:

> (a) General rule.—A definite and seasonable expression of acceptance or a written confirmation which is sent within a

> reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, **unless acceptance is expressly made conditional on assent to the additional or different terms.**
>
> (b) Effect on contract.—The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
> (1) **the offer expressly limits acceptance to the terms of the offer**;
> (2) they materially alter it; or
> (3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (c) Conduct establishing contract.—Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. **In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.**

13 Pa. Cons. Stat. § 2207 (emphasis added).

As noted, Defendant made written offers through its Purchase Orders, which include the arbitration clause implicated in Defendant's underlying motion. Defendant's Purchase Orders also include a clause preemptively rejecting any amendments or additions to its terms. This clause provides, in relevant part:

> Any terms in Seller's Order acknowledgment, sales literature, quotations, invoice, or any other documents which are in conflict with or in addition to these terms stated on the face or back hereof are hereby deemed to be material alterations to the terms of an Order and . . . notice is hereby given to Seller that any such terms are rejected.

(Def.'s Purchase Order No. 2764, Compl. Ex. C, ECF 1-5, at p. 4). Upon receipt of Defendant's Purchase Orders, Plaintiff issued its own written Order Acknowledgements that incorporate Plaintiff's Terms and Conditions found on Plaintiff's website. Plaintiff's Terms and Conditions do not include any arbitration provisions and instead include the forum selection clause Plaintiff

9

seeks to enforce as well as a clause that makes Plaintiff's acceptance expressly conditional upon the offerors assent to its terms:

> TRC's acceptance of any order for Products (each, an "Order") is expressly made conditional upon assent to the terms and conditions set forth herein.  TRC does not accept and hereby expressly rejects all terms and conditions contained in any document issued by Buyer which purport to pertain to the Products and/or the relationship between TRC and Buyer, which terms and conditions are in addition to or inconsistent with the terms and conditions set forth herein, and such terms and conditions will not become part of any Order.

(Pl.'s Terms and Conditions, Compl. Ex. B, ECF 1-4, at p. 2).

Because both parties' writings were made expressly conditional on the other party's agreement to the other's terms and conditions and neither party agreed to the other's terms and conditions, there is no valid contract between the parties.  *See* 13 Pa. Cons. Stat. § 2207(a)–(b) (providing that a writing will not operate as an acceptance when "acceptance is expressly made conditional on assent to the additional or different terms" and that additional terms in an acceptance will not become part of the contract when "the offer expressly limits acceptance to the terms of the offer").  However, pursuant to § 2207(c), a valid contractual relationship may be formed when the parties' conduct indicates an intention to be bound to one another.  *See* 13 Pa. Cons. Stat. § 2207(c); *Flender*, 830 A.2d at 1284.  Here, the parties' intention to enter a contract was made clear by the parties' conduct, as each went forward with and participated in three sales transactions across the span of several months.  Plaintiff procured the ordered electrical components from its manufacturer and began delivering them to Defendant, and Defendant continued placing orders with Plaintiff and made partial payment for the electrical components received.  As such, and not disputed by either party, the parties entered into a binding contact with respect to the sales at issue. *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.2d 91, 98 (3d Cir. 1991) (finding under U.C.C.

that the parties entered into a binding contract by way of their respective performance despite the parties' disagreement as to the terms governing the contractual relationship).

Having found a binding contract, this Court must next determine the terms governing the parties' contractual relationship. As the Third Circuit reasoned in *Step-Saver*, "[w]hen the parties'[] conduct establishes a contract, but the parties have failed to adopt expressly a particular writing as the terms of their agreement, and the writings exchanged by the parties do not agree, UCC § 2–207 determines the terms of the contract." 939 F.2d at 98. Specifically, § 2207(c) provides that when the parties' writings are insufficient to form a mutually agreed-upon contract, the terms of the agreement between the parties will consist of the terms that the parties agree upon, "together with any supplementary terms incorporated under any other provisions of this title." 13 Pa. Cons. Stat. § 2207(c).

Where the parties' writings contain different and/or conflicting terms, a majority of courts apply what is frequently called the "knockout rule," which "require[s] the cancellation of terms in both parties' documents that conflict with one another." *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 653–54 (E.D. Pa. 2002) (discussing majority and minority rules and adopting majority rule); *Flender*, 830 A.2d at 1285–86 (same). Though the Pennsylvania Supreme Court has not yet addressed whether Pennsylvania courts would apply the "knockout" rule, the Superior Court of Pennsylvania, a panel of the Third Circuit, and a number of federal district courts in Pennsylvania have predicted that the Pennsylvania Supreme Court would adopt and apply it.[5] *See*

---

[5] When applying Pennsylvania law in the absence of Pennsylvania Supreme Court interpretation, district courts must predict how the Pennsylvania Supreme Court would rule on the issue. *See Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 661 (E.D. Pa. 2020) (quoting *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 n.15 (3d Cir. 1996)). In doing so, the opinions of Pennsylvania's intermediate appellate court will be given significant weight. *See SodexoMAGIC*, 23 F.3d at 813 ("[T]he decisions of intermediate Pennsylvania appellate courts receive 'significant weight in the absence of an indication that the highest state court would rule otherwise.'") (internal citation omitted).

*Flender*, 830 A.2d at 1285–86; *SCM Grp.*, *USA v. Custom Designs & Mfg.*, 89 F. App'x 779, 780 (3d Cir. 2004); *Reilly Foam*, 206 F. Supp. 2d at 653–54; *Commc'ns Supply Corp. v. Iron Bow Techs.*, 529 F. Supp. 3d 423, 436–37 (W.D. Pa. 2021); *Tyco Elecs. Corp. v. Milwaukee Elec. Tool Corp.*, 2012 WL 4793745, at *4 (M.D. Pa. Oct. 9, 2012); *Measurement Specialties, Inc. v. Stayhealthy.com*, 275 F. Supp. 2d 638, 642–43 (E.D. Pa. 2003). This Court finds these decisions persuasive and adopts and incorporates their reasoning here. Accordingly, this Court will apply the knockout rule.

Finally, turning to the core of the parties' present dispute, this Court must determine whether the parties' agreement includes an arbitration provision. As noted above, Plaintiff's Terms and Conditions do not contain an arbitration provision but include a forum selection clause, designating as follows:

> Any dispute arising out of or in connection with any Order, Product or the relationship of TRC and Buyer will be adjudicated exclusively in the state courts for Bucks County, Pennsylvania or the federal courts for the Eastern District of Pennsylvania, and all parties consent to personal jurisdiction and venue therein.

(Pl.'s Terms and Conditions, Compl. Ex. B, ECF 1-4, at p. 5). Defendant's Terms and Conditions, on the other hand, include an arbitration provision; *to wit*: "[a]ny controversy arising out of or relating to an Order, including any modification or amendment thereof, shall, at Buyer's option, be resolved by arbitration within 25 miles of Burlington, Massachusetts pursuant to the rules of the American Arbitration Association." (Def.'s Purchase Order No. 2764, Compl. Ex. C, ECF 1-5, at p. 5). Under the majority knockout rule adopted by this Court, these two provisions knock each other out if they conflict. *See Flender*, 830 A.2d at 1285–86; *SCM Grp.*, *USA*, 89 F. App'x at 780; *Reilly Foam*, 206 F. Supp. 2d at 653–54. The parties disagree as to whether these two provisions conflict.

12

While this specific issue, too, has not been decided by the Pennsylvania Supreme Court, the issue was decided by the Pennsylvania Superior Court in *Flender*. 830 A.2d at 1287. In *Flender*, two parties entered into a sale of construction materials and a payment dispute arose. 830 A.2d at 1281. The buyer in *Flender* issued a purchase order that included a mandatory arbitration clause, and the seller fulfilled the order. *Id.* Upon fulfillment, the seller included an invoice that included the seller's "Conditions of Sale and Delivery," which provided that "***exclusive jurisdiction and venue of any dispute arising out of*** or with respect to this Agreement or otherwise relating to the commercial relationships of the parties ***shall be vested in the Federal and/or State Courts located in Chicago, Illinois* . . . .**" *Id.* (emphasis added). In applying § 2207 to resolve which terms should be included in the parties' contract, the Superior Court affirmed the trial court's decision that the arbitration clause and the forum selection clause were conflicting, different terms that knocked each other out. *Id.* at 1287. This Court finds *Flender* persuasive and applies it here. Following the *Flender* court's analysis, the parties' respective terms regarding dispute resolution conflict with one another, and, accordingly, knock each other out. As such, this Court finds that the parties' contract does not include an arbitration provision.

Notably, despite the similarity of *Flender* to this case, Defendant makes no mention of the case in its brief or its reply. Instead, Defendant relies on two inapposite decisions: *Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987), and *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005). Defendant's disregard of *Flender* and reliance on *Patten* and *Bank Julius Baer* are misplaced. In *Patten*, the Third Circuit analyzed whether a party's agreement to a forum selection clause waived the party's right to arbitrate under the National Association of Securities Dealers ("NASD") regulations. 819 F.2d at 402–03. The Third Circuit found that the forum selection clause in the agreement between the parties did not

13

waive the appellee's right under NASD regulations to arbitrate because the forum selection clause did not specifically mention arbitration, and "[a] party signing a waiver must know what rights it is waiving." *Id.* at 407 (internal citation omitted).  In *Bank Julius Baer*, the United States Court of Appeals for the Second Circuit (the "Second Circuit") examined a case involving multiple contracts between two parties.  424 F.3d at 280.  The first contract between the parties included an arbitration agreement signed by both parties.  *Id.* at 282.  A subsequent contract included a merger clause disclaiming all prior agreements between the parties and also a broad forum selection clause.  *Id.*  The Second Circuit relied on the Third Circuit's reasoning in *Patten* and ultimately found that the arbitration clause and the forum selection clause could both be given force.  *Id.* at 284–85.

Neither *Patten* nor *Bank Julius Baer* is meaningfully relevant to the instant case.  First, neither case interprets or applies Pennsylvania law, the U.C.C., or the knockout rule, as did *Flender*.  Moreover, rather than interpreting a dispute between contracting parties on equal footing, *Patten* applies the constraints of NASD regulations, which provide extra-contractual terms, upon an NASD member corporation.  819 F.2d at 406.  In addition, here, unlike in *Patten*, there is no argument concerning the waiver of an established right.  In *Bank Julius Baer*, the court found that the arbitration agreement contained in the parties' written, signed contract was enforceable as a prior, collateral contract.  424 F.3d at 283, 284–85.  Here, the parties have not demonstrated the same clear understanding of an intent to be bound to arbitrate.  For these reasons, neither *Patten* nor *Bank Julius Bair* gives this Court reason to stray from the Pennsylvania Superior Court's decision in *Flender*.

**CONCLUSION**

For the reasons set forth, Defendant's motion to compel arbitration is denied. Because the motion to compel arbitration is denied, Defendant's motion to dismiss or, alternatively, to stay the proceedings is also denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.